Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Anthony A. Alaimo | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 94 C 7427 | **DATE** | 6/11/2003 |
| **CASE TITLE** | Tome Engenharia E. Transportes, Ltda vs. Sharon Malki | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiff's exhibits are not objected to and thus, in accordance with the district judge's standing order, will be admitted when tendered at trial. Plaintiff's deposition designations for the depositions of Mario Filho Tundisi dated May 20, 1994, Laercio Tome dated March 26, 1997 and Sharon Malki dated September 28, 1994 and October 11, 1999 will be excluded (except for those portions of Ms. Malki's deposition that are admissible as party-opponent admissions). All of plaintiff's other deposition designations will be admitted at trial, subject to a showing of witness unavailability. To the extent not inconsistent with this ruling, plaintiff's motion to admit deposition testimony from other cases (doc. # 403) is granted. Plaintiff's motions *in limine* concerning evidence of plaintiff's tax and financial records are withdrawn; plaintiff's other motions *in limine* are denied. Plaintiff's motion for leave to file an additional appearance of Stephen E. Smith (doc. # 401) is granted. All matters subject to the referral having been concluded, the referral is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 1 2 2003 | 406 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | JS | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 6/11/2003 | |
| | courtroom JJ deputy's initials | date mailed notice | |

Filed stamp: U.S. DISTRICT COURT, 03 JUN 11 PM 3:32, QT 03-0371J

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TOME ENGENHARIA E. TRANSPORTES, LTDA, | ) |
| Plaintiff, | ) |
| vs. | ) No. 94 C 7427 |
| SHARON MALKI, | ) District Judge Alaimo |
| Defendant. | ) Magistrate Judge Schenkier |

JUN 1 2 2003

## MEMORANDUM OPINION AND ORDER

As may be expected by its age, this case has a long history, most of which we need not recite in order to address the matters now before the Court. We pick up the events with an order docketed on September 22, 1999, entering judgment against certain defendants and dismissing the case against other defendants pursuant to settlement, but with a proviso that under certain circumstances the case could be reinstated against defendants Sharon Malki and James Tehrani (doc. # 372). By an order dated November 30, 1999, the district judge reinstated the case against Sharon Malki alone (doc. # 383).

Following that order reinstating the case against Ms. Malki, the case was dormant for more than three years. Then, on March 21, 2003, Ms. Malki filed a motion to dismiss, pursuant to Fed. R. Civ. P. 41(b), for want of prosecution (doc. # 386). The district judge denied the motion by an order dated April 2, 2003 (doc. # 390). On that same date, the district judge entered a minute order directing the parties to submit a joint consolidated proposed pretrial order by April 30, 2003 (doc.

466

# 391).[1] The minute order attached and incorporated the district judge's standing order governing pretrial proceedings. That standing order requires that lead counsel for the parties must meet and confer in person to prepare the pretrial order, and states that a party's failure to comply with its requirements "may result in dismissal of the complaint or answer or in other sanctions determined appropriate by the Court" (*id.*, Standing Order, at 1).

On April 7, 2003, plaintiff's counsel sent a letter to defense counsel seeking to schedule the personal meeting required by the district judge's standing order. Thereafter, on April 11, 2003, defendant Sharon Malki, through her counsel, Robert Orman, submitted a pleading stating that she will "stand on her Rule 41(b) Motion and will seek relief in the Appellate Court to the extent necessary" (doc. # 392). On April 14, 2003, the plaintiff filed a response (doc. # 393) asserting that Ms. Malki's pleading was an attempt to "sabotage" the requirement in the district judge's standing order for personal participation of both lead counsel in the preparation of the final pretrial order. On April 15, 2003, the district judge again directed the parties to meet and confer in accordance with the standing order, and warned that a failure to comply with direction may lead to the defaulting party's pleadings being stricken (doc. # 394). This order led defense counsel to send a letter dated April 18, 2003 to the district judge's chambers (doc. # 395). In that letter, Mr. Orman, on behalf of Ms. Malki, stated unequivocally that the defendant "does not intend to participate in the preparation of a pretrial order and acknowledges that a default may be entered herein and that pleadings may be stricken" (*id.*).

---

[1] On April 19, 1999, the parties had filed a final pretrial order (doc. # 357). However, that document was superseded by the September 22, 1999 order disposing of the case, thus necessitating the filing of a new final pretrial order.

Mr. Orman apparently was as good as his word on this point, because on April 30, 2003, the plaintiff filed a final pretrial order without any participation by the defendant (doc. # 396). The certificate of service accompanying that document shows that the plaintiff served the final pretrial order on Mr. Orman. In that final pretrial order, the plaintiff, among other things, listed potential witnesses, identified deposition transcripts that the plaintiff would seek to use at trial, and filed six motions *in limine*: (1) to bar the defense from referring to plaintiff's tax records at trial, questioning plaintiff about his tax records, and introducing plaintiff's tax records into evidence; (2) to bar the defense from referring to plaintiff's financial records at trial, questioning plaintiff about his financial records, and introducing plaintiff's financial records into evidence; (3) to estop the defense from denying that the easy link telex ID number for the March 2, 1992 telex to Tome was the telex number of defendant IMG; (4) to recognize Brazilian import law; (5) to bar the defense from denying facts previously admitted; and (6) to bar the translation of document M0000268 and bar the defense from arguing that document M0000268 was created in 1992. However, the final pretrial order did not set forth a list of plaintiff's trial exhibits, or a designation of the specific deposition testimony (by line and page) that the plaintiff would offer at trial.

On May 27, 2003, the district judge referred the case to this Court for a ruling on all pending motions *in limine*, and to conduct a hearing and to rule on all objections to documentary evidence and objections to deposition testimony to be filed by the parties by June 2, 2003. Upon receiving this referral, the Court's deputy clerk contacted the lead counsel for the parties to schedule a status conference with the parties for May 30, 2003. When the Court's deputy clerk contacted defense counsel by telephone to schedule the conference, Mr. Orman informed the Court's deputy that he and his client would not attend any proceedings before this Court; would not attend the final pretrial

conference scheduled to take place before the district judge on June 16, 2003; and would not attend the trial of this matter set to take place in July 2003.

Thus, only the plaintiff's counsel attended the May 30 status conference; defense counsel chose not to attend. The Court placed on the record the information that Mr. Orman provided to the Court's deputy clerk concerning the defendant's refusal to participate in the pretrial proceedings or trial, and proceeded with the status conference in defense counsel's absence. At the status conference, the Court reminded plaintiff's counsel of her obligation to submit exhibits and deposition designations in compliance with the standing order.[2] Plaintiff's counsel also asked to present a motion for default judgment, in light of the defense's refusal to participate in the pretrial order process and the trial. The Court informed plaintiff's counsel that any such motion was not within the scope of the referral order, and would have to be presented to the district judge. The Court also informed plaintiff's counsel that absent an order from the district judge, the filing of such a motion would not relieve the plaintiff of its obligation to submit exhibits and deposition designations on June 2, 2003.

Notwithstanding that direction, on the afternoon of June 2, 2003, counsel representing the plaintiff contacted the Court's deputy clerk to request that this Court hear an emergency motion for default judgment. The Court's deputy clerk again instructed plaintiff's counsel that any such motion would have to be presented to the district judge. Later that day, the plaintiff submitted additional pretrial submissions (containing deposition designations, exhibit and witness lists, jury instructions

---

[2]Plaintiff's counsel argued that it was sufficient for her simply to list the depositions she proposed to present to the jury, without identifying the specific portions of each deposition she proposed to present. That position, of course, is flatly inconsistent with the standing order, which expressly states that testimony to be presented by deposition is to be designated by "the specific deposition pages and lines to be offered" (Standing Order, ¶ 17).

4

and expert witness resumes), and a motion to adopt certain deposition testimony from other lawsuits (doc. ## 402, 403). The notices attached to those documents show that they were served on Mr. Orman.

In the background of these events, we address below those matters in the pretrial order and the additional submissions filed on June 2, 2003 that are within the scope of the referral order: plaintiff's exhibit list, plaintiff's deposition designations, and plaintiff's motions *in limine*. We also address one additional motion that the plaintiff has filed: a motion for leave to file an additional appearance of counsel (doc. # 401).[3]

## I.

In its June 2, 2003 submission, the plaintiff listed 148 trial exhibits. The district judge's order required that any objections to the exhibits be submitted by that date. Consistent with her repeated statements that she would not participate in further trial court proceedings in this matter, Ms. Malki has not offered objections to any of the exhibits.

We note that there is no indication that the plaintiff tendered this exhibit list to the defense with the April 30, 2003 final pretrial order, or at any time thereafter until June 2, 2003. Ordinarily, this would be a significant failing, because "the plaintiff(s) shall have the responsibility to initiate compliance" with the standing order (Standing Order, at 1) (emphasis in original). In order for the

---

[3]The plaintiff also has filed one other motion: an emergency motion for default judgment on liability and damages (doc. # 400). That motion is outside the scope of the referral order, and the Court therefore will not address it in this opinion. However, we do wish to comment on the plaintiff's accusation that Mr. Orman made an "*ex parte* communication to the court" (doc. # 400: Emergency Motion for Default Judgment on Liability and Damages, ¶ 4). That accusation is false. At no time did Mr. Orman have an communication with this Magistrate Judge outside the presence of plaintiff's counsel. And, the telephone conversation that Mr. Orman had with the Court's deputy clerk in connection with the deputy clerk's effort to arrange a status conference was not an "*ex parte* communication" – just as the telephone call placed by plaintiff's counsel to the Court's deputy clerk on June 2, 2003 to inquire about the filing of an emergency motion was not an "*ex parte* communication."

5

defense to know if it has objections to plaintiff's proposed exhibits, the defense of course must know what the proposed exhibits are. But here, it is plain that from the outset the defense refused to participate in the pretrial order process, and took the position that any relief Ms. Malki might seek would be on an appeal of the refusal to dismiss the case for want of prosecution.

In these unusual circumstances, the Court believes that the plaintiff's failure to offer proof that it tendered the proposed exhibit list to the defense prior to June 2, 2003 is not a fatal shortcoming. Defendant's failure to participate in the pretrial order process constitutes a waiver of her right to object to the listed exhibits. Accordingly, under the standing order, because the plaintiff's exhibits are "not objected to [,they] will be admitted when tendered at trial" (Standing Order, ¶ 16(c)) (emphasis in original).

## II.

The foregoing analysis generally applies to the plaintiff's deposition designations as well. The final pretrial order submitted by the plaintiff on April 30, 2003 did not comply with the requirements of the standing order concerning identification of deposition testimony, because it listed only the deposition transcripts and videos that the plaintiff intended to use but failed to identify the "specific deposition pages and lines to be offered" (Standing Order, ¶ 17). The plaintiff largely (but not entirely, as we discuss below) corrected that element of non-compliance with its June 2, 2003 submission. In any event, we find that the plaintiff's initial failure to identify the pages and lines of deposition testimony to be read did not cause the defendant any prejudice, in light of the defendant's statements before -- and after -- the filing of the pretrial order making clear that the defendant would not participate in the preparation of the pretrial order or in any other proceedings in the trial court.

Accordingly, the Court finds that the defendant has waived objections to the use of the listed depositions at trial. That said, the Court nonetheless finds that there are limitations that should be imposed on plaintiff's proposed presentation of deposition testimony.

*First*, the plaintiff's June 2, 2003 submission fails to submit any designations for certain depositions listed in the April 30, 2003 final pretrial order – the deposition of Mario Filho Tundisi dated May 20, 1994, and the deposition of Sharon Malki dated September 28, 1994. The failure to provide specific page and line designations is contrary to the requirement set forth in the standing order, that was reiterated by this Court at the status conference on May 30, 2003. The defendant's failure to participate in the pretrial order process is no excuse for the plaintiff's independent failure to provide page and line deposition designations. Accordingly, the Court rules that those two deposition transcripts may not be offered at trial (except insofar as statements in Ms. Malki's deposition may be admissible as party-opponent admissions under Federal Rule of Evidence 801(d)(2)).

*Second*, there are two depositions for which the plaintiff simply has designated all or virtually all the transcript, without eliminating material that is "extraneous, redundant, and unnecessary matter," as required by the standing order (Standing Order, ¶ 17(a)). Falling into this category are the deposition transcripts of Laercio Tome (March 26, 1997) and Sharon Malki (October 11, 1999). Again, the defendant's refusal to participate in the pretrial order process does not excuse the plaintiff's independent failure to provide the deposition designations that are required by the standing order, and that are necessary to the orderly presentation of evidence at trial. The Court therefore rules that those two deposition transcripts may not be presented at trial – again, except for any

specific statements by Ms. Malki from her October 11, 1999 deposition that may qualify as admissions by a party-opponent under Rule 801(d)(2).

*Third*, with respect to the remaining transcripts, the Court finds that they may be presented only upon a showing at trial that the witnesses whose testimony the plaintiff seeks to offer by deposition are "unavailable" within the meaning of Fed. R. Evid. 804(a). This holds true as well for the prior deposition testimony that the plaintiff seeks to offer from other litigation, which qualifies as "former testimony" within the meaning of Fed. R. Evid. 804(b)(1) and thus is useable at trial assuming the unavailability of the witnesses. Thus, the Court grants plaintiff's motion to adopt certain deposition testimony from other lawsuits (doc. # 403) in part: those depositions may be used at trial only if they have not been excluded because of the failure to properly designate them (as discussed above), and only upon a showing of witness unavailability at trial.

### III.

We now turn to the plaintiff's motions *in limine*. At the threshold, we note that by a letter dated June 5, 2003 (doc. # 405), the plaintiff has withdrawn two of the six motions *in limine* filed with the April 30, 2003 final pretrial order: plaintiff's motions *in limine* to bar defendants (1) from referring to plaintiff's tax records at trial, questioning plaintiff about his tax records, and introducing plaintiff's tax records into evidence, and (2) from referring to plaintiff's financial records at trial, questioning plaintiff about his financial records, and introducing plaintiff's financial records into evidence. Accordingly, we address only the remaining four motions *in limine*.

### A.

Plaintiff moves to estop defendant from denying that the "easy link telex ID number" for the March 2, 1991 telex to Tome was the telex number of defendant IMG. The motion does not allege

8

that Ms. Malki has taken an inconsistent position in this or other lawsuits with respect to the telex number. Rather, the plaintiff argues that this telex number was used on numerous occasions to reach IMG, and that the Ms. Malki would be unable to offer evidence to dispute that the telex number belonged to IMG. However, plaintiff's skepticism about Ms. Malki's ability to effectively contest that the telex number belonged to IMG would not estop Ms. Malki from attempting to do so (if she were choosing to participate in the case). This motion *in limine* is denied.

## B.

Plaintiff has moved *in limine* for an order recognizing certain principles of Brazilian import law. In this case, the plaintiff alleges that Ms. Malki committed fraud and breach of contract by intentionally delivering two forklift trucks that were manufactured in 1975 and 1981, respectively, when the deal between the parties called for the delivery of trucks manufactured in 1988. The defense has acknowledged that the contract called for trucks manufactured in 1988 and that the trucks delivered were manufactured in 1975 and 1981, but has argued that there was no breach of contract or fraud because the plaintiff knew what it was getting. The defense has argued that the plaintiff and the defense engaged in a joint scheme to create paperwork misrepresenting the true lineage of the trucks because of Brazilian import laws that would have prohibited the importation of trucks made in 1975 and 1981 (which the plaintiff wanted because they were cheaper). Thus, according to the defense, the parties jointly engaged in a scheme to fool the Brazilian authorities and to lower the import taxes that the plaintiff would have to pay on the purchase (*see* doc. # 333: report and recommendation denying cross motions for summary judgment, at 15-16; *see also* doc. # 342: order overruling objections to report and recommendation).

The plaintiff now asks the Court to adopt an interpretation of Brazilian law that would contradict this theory of defense. Specifically, plaintiff asks the Court to find that at the time of the contract between the parties (1992), Brazilian law did not ban the importation of forklift trucks manufactured in 1975 or 1981. To support its interpretation of Brazilian law, the plaintiff offers an affidavit of Sebastiao de Souza Mattos Neto, an attorney licensed in Illinois and Brazil. Mr. Neto opines that under certain Brazilian administrative guidelines (which he says do not have the force of law), the forklift trucks in question would qualify as "heavy equipment" and not "precision" equipment; that based on that distinction the import guidelines would not have barred the importation of trucks that were less than 20 years old; and that the 1992 importation of trucks manufactured in 1975 and 1981 thus would not have run afoul of the guidelines. The plaintiff offers this opinion to show that there thus was no reason to engage in the scheme alleged by the defendant.

In support of his opinions, Mr. Neto attaches to his affidavit what purports to be a copy of the relevant portions of the Brazilian administrative guidelines – but those guidelines are not provided in English. Mr. Neto further has opined that concealing the actual age of the trucks and removing serial numbers from the trucks would violate Brazilian criminal laws. Mr. Neto does not provide any citations to Brazilian statutory or case law to support those opinions.

Federal Rule of Civil Procedure 44.1 governs the determination of foreign law in federal courts, and states as follows:

> A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Here, we find that the plaintiff has fulfilled the requirement of notice "by pleadings or other reasonable means" by raising the issue of foreign law by its motion *in limine*. To the extent that Ms. Malki might quibble with the adequacy of the notice, she has waived that point by her conscious decision not to participate in the pretrial (or trial) proceedings.

However, the Court is unable to find that the plaintiff has adequately established the point of Brazilian law that it asserts. Notwithstanding Ms. Malki's refusal to participate in the proceedings, the Court has an independent obligation to ensure that it does not adopt an interpretation of foreign law that is not properly substantiated. And, for a number of reasons, Mr. Neto's affidavit simply does not adequately substantiate the opinions about Brazilian law that he espouses. *First*, while Mr. Neto states that he has been a "practicing Brazilian attorney for over twenty (20) years," he does not disclose the nature of that practice. In particular, he fails to explain the commercial law or criminal law experience he possesses that affords him the basis to express the opinions he advances. *Second*, the principal basis for Mr. Neto's opinions about Brazilian import law is an interpretation of the language of certain guidelines. But, Mr. Neto does not offer even a translation of the guidelines, so that the Court could assess for itself the credibility of that interpretation. Nor does Mr. Neto offer any authoritative support – in the form, for example, of decided case law or opinions expressed by the Brazilian agency responsible for applying the guidelines – that would confirm his opinion. *Third*, as for the criminal law opinions he expressed, Mr. Neto does not provide the text (in any language) of any statutes upon which he relies, or any case law or other materials that apply or interpret the criminal propositions he advances.

We view the materials offered by the plaintiff here to prove Brazilian law is no better than the materials that the Seventh Circuit found inadequate to establish foreign law in *Twohy v. First*

*National Bank of Chicago*, 758 F.2d 1185 (7th Cir. 1985). In that case, the district court had found that the plaintiff had no claim under Spanish law (which the parties had conceded was applicable). On review, the Seventh Circuit concluded that the district court had reached the correct result, despite the fact that neither the parties nor the district court had sufficiently explored the intricacies of Spanish law. In explaining that conclusion, the Seventh Circuit described the research into Spanish law provided by the defendant as "inadequate:"

> Defendant's experts, attorneys practicing in Spain, opined from their personal knowledge that plaintiff's action is barred under Spanish law because, as is the rule in common law, shareholders of Spanish corporations may not sue for third party harms to the corporation in which they hold stock. Something more might have been expected of defendant, . . .

758 F.2d at 1193. The Seventh Circuit noted that "nothing in Rule 44.1 strictly requires a district judge to engage in private research" to remedy an inadequate submission by the parties on foreign law. *Id.* The district court retained the discretion to demand "a more complete presentation by counsel" on the question of foreign law. *Id.*; *see also* Advisory Committee Notes to Rule 44.1 ("[T]he court is free to insist on a complete presentation by counsel"). But, the Seventh Circuit stated that before dismissing a complaint based on a point of foreign law, the district court either should require the "more complete presentation by counsel" or make its own full inquiry into the subject. *Id.* at 1194.

In the unusual circumstances presented by this case, the Court sees no reason to require a supplemental presentation by the plaintiff or to embark on its own independent research. The point of foreign law that plaintiff advances is offered to rebut a defense that it expected Ms. Malki to offer at trial. However, Ms. Malki has made it clear – on multiple occasions – that she has no intention

12

of appearing at or participating in the trial. Thus, there will be no occasion for the plaintiff to use the foreign law point that it urges in the motion *in limine* to rebut a trial defense offered by Ms. Malki, because she does not intend to offer any defense. Rather than saddle the plaintiff or the Court with further inquiry into a point of Brazilian law that now appears unnecessary, the Court simply will deny the motion *in limine* to recognize the asserted point of Brazilian law.

## C.

Plaintiff moves to bar the defense from denying at trial certain facts that this Court concluded were undisputed in the pleadings seeking summary judgment. Plaintiff's theory is that because this Court's report and recommendation found that certain facts were undisputed, the defense did not object to those findings, and the Court's report and recommendation was adopted by the then-presiding district judge, the defense cannot now challenge those facts.

Federal Rule of Civil Procedure 56(d) – which the plaintiff does not cite – provides in relevant part that when a case is not fully adjudicated on a motion for summary judgment, if practicable the district court shall enter an order "specifying the facts that appear without substantial controversy, . . . Upon the trial of the action the facts so specified shall be deemed established." The purpose of providing the district court with this authority is to "serve the salutary purpose of allowing a Court to see to it that the expenditure of time by the parties and the Court on a failed summary judgment motion has not been in vain." *Olech v. Village of Willowbrook*, No. 97 C 4935, 2002 WL 31317415, *2 (N.D. Ill. Oct. 10, 2002).

In this case, neither this Court nor the then-presiding district judge entered a Rule 56(d) order establishing for trial the facts identified in the plaintiff's motion; perhaps that is why the plaintiff does not cite to Rule 56(d). And, it strikes the Court as rather late in the day, more than four years

13

after the summary judgment rulings by this Court and the then-presiding district judge, to enter such an order now. Moreover, a fundamental purpose of entering a Rule 56(d) order is to streamline the trial. But here, the plaintiff makes no showing of how entering the requested order would make certain trial witnesses unnecessary, or otherwise significantly reduce the time required for the presentation of evidence.

Accordingly, the Court denies this motion *in limine*. The plaintiff nonetheless can take solace in the fact that Ms. Malki has expressed her intent not to participate in the trial, and without participating at trial Ms. Malki cannot do what plaintiff's motion seeks to forbid: deny certain facts that were undisputed in the summary judgment proceedings.

### D.

The plaintiff has moved to bar the defense from using at trial a certain translation of the document Bates numbered M0000268, or to argue that the document was created in 1992. The Court addressed this document in its summary judgment report and recommendation (doc. # 333: Report and Recommendation, at 18-19). We find that the arguments raised in the motion *in limine* attack the weight to be given to the translation and to the argument about the date the notes were created, but do not undermine the admissibility of the translation or the evidence that the defense might offer about the date the notes were created: if Ms. Malki were to appear at trial, which she has stated she will not do. While the plaintiff also makes a rote argument that the evidence should be excluded under Federal Rule of Evidence 403, it offers no explanation of precisely what *unfair* prejudice would be created by admission of this evidence, or how that unfair prejudice *substantially* outweighs the probative value of the evidence. Accordingly, this motion *in limine* is denied.

## IV.

We now turn to plaintiff's motion for leave to file an additional appearance of Stephen E. Smith (doc. # 401). At the outset, we note that the stated reasons for the motion do not warrant granting it. The motion cites as one reason for the additional appearance documents that, on May 30, 2003, this Court required to be filed by June 2, 2003. That clearly cannot be a basis for an additional appearance by counsel. *First*, the documents in issue (an exhibit list and a designation, by page and line, of deposition testimony discussed at the status conference on May 30, 2003) were documents that the district judge's standing order required the plaintiff to submit pursuant to the order entered on April 2, 2003. Thus, it should not have been a last-minute surprise to the plaintiff that those documents had to be filed. *Second*, to the extent extra assistance was needed to finish the job required by the district judge's April 2 order, that assistance was furnished and completed by June 2, 2003. The work already completed cannot be the basis for adding a new attorney to the case.

The plaintiff also cites the need for additional assistance at the final pretrial conference and at trial. Given the defendant's stated refusal to participate in those proceedings, we greatly doubt that the volume of evidence to be offered at trial or the complexity of the trial will be such that the plaintiff's current counsel has need for additional help.

However, we will grant the motion based on a consideration not disclosed in the motion. A review of the attorney rolls of this Court discloses that the plaintiff's lead counsel is admitted to the general bar of this Court, but is not a member of the trial bar. As a result, she cannot try the case without the assistance of an attorney admitted to the trial bar of the Court. *See* Local Rules for the Northern District of Illinois, LR 83.12(b) ("An attorney who is a member of the bar, but not of the trial bar, may appear during testimonial proceedings only if accompanied by a member of the trial

bar who is serving as an advisor"). Mr. Smith is a member of the trial bar. Accordingly, in order to permit plaintiff's lead counsel (who has great familiarity with the case) to participate at trial and thus to facilitate the presentation of the case, the Court will grant the motion to allow the additional appearance of Mr. Smith.

## CONCLUSION

For all of the foregoing reasons, the Court rules on the matters referred to it as follows:

1. Plaintiff's exhibits are not objected to and thus, in accordance with the district judge's standing order, will be admitted when tendered at trial.

2. Plaintiff's deposition designations for the depositions of Mario Filho Tundisi dated May 20, 1994, Laercio Tome dated March 26, 1997 and Sharon Malki dated September 28, 1994 and October 11, 1999 will be excluded (except for those portions of Ms. Malki's deposition that are admissible as party-opponent admissions). All of plaintiff's other deposition designations will be admitted at trial, subject to a showing of witness unavailability. To the extent not inconsistent with this ruling, plaintiff's motion to admit deposition testimony from other cases (doc. # 403) is granted.

3. Plaintiff's motions *in limine* concerning evidence of plaintiff's tax and financial records are withdrawn; plaintiff's other motions *in limine* are denied.

4. Plaintiff's motion for leave to file an additional appearance of Stephen E. Smith (doc. # 401) is granted.

ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATED: June 11, 2003**

16